UNITED STATES OF AMERICA
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:23-cr-207-WFJ-AAS
                                                18 U.S.C. § 371
STEVEN PARKER

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy to Violate the Federal Anti-Kickback Statute)

#### A.   Introduction

At times material to this Information:

The Defendant and Background

1. The defendant, STEVEN PARKER ("PARKER"), resided in Prosper, Texas. PARKER owned and operated Unique Media Connections ("UMC") in Addison, Texas. Sometimes, PARKER operated UMC under the fictitious name, Media Lead Kings ("MLK").

2. UMC was a "broker" company that purchased completed doctors' orders for durable medical equipment from "marketers" and resold the completed doctors' orders to DME front companies.

3. Durable medical equipment ("DME") was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a

1

type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

4. A "DME front" company was a shell entity that purported to be a legitimate supplier of DME.

5. "Marketers" purchased "leads" generated by call centers, including at least one located overseas. One of UMC's main sources of completed doctors' orders for DME was J.F., who operated Company 1 in Amory, Mississippi.

6. "Leads" consisted of patient data and recordings of calls with consumers, most of whom were Medicare beneficiaries. During the calls, representatives typically inquired about consumers' Medicare eligibility and their interest in receiving a brace or braces. The representatives harvested this information along with beneficiaries' personally identifiable information ("PII") to build the "leads," which Company 1 then converted into completed doctors' orders.

The Medicare Program

7. The Medicare Program ("Medicare") was a federal health care benefit program that provided items and services to individuals who were (a) age 65 or older, (b) had certain disabilities, or (c) had end-stage renal disease. Individuals who received Medicare benefits were called "beneficiaries."

8. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), which was an agency of the United States Department of Health and Human Services ("HHS").

9. To help administer Medicare, CMS contracted with private insurance companies called "Medicare Administrative Contractors" or "MACs." MACs performed many functions, such as enrolling DME suppliers into the Medicare program and processing Medicare claims. In performing such functions, MACs were assigned to particular geographical "jurisdictions." For DME claims, they were called Jurisdictions A, B, C, and D.

10. Medicare was made up of several component "parts" that covered different items and services. Medicare Part A, for example, covered inpatient hospital stays. Medicare Part B covered, among other items and services, outpatient care and supplies, including orthotic devices, referred to as DME (such as the braces referred to above in paragraph 3).

11. Under Medicare Part B, beneficiaries could only receive Medicare-covered DME from "suppliers" that were enrolled in Medicare.

12. To receive payment from Medicare, enrolled suppliers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

13. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

### B.  The Conspiracy

14. From at least in or about August 2017, through in or about April 2019, in the Middle District of Florida and elsewhere, the defendant,

STEVEN PARKER,

knowingly and voluntarily conspired with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully solicit and receive remuneration (kickbacks and bribes), directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, ordering, and arranging for, and recommending purchasing, and ordering any good, service, and item for which payment may be made in whole or in part under a federal health care program, that is Medicare, in violation of 42 U.S.C. § 1320a-7b(b)(1)(B).

### C.  Manner and Means of the Conspiracy

15. The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

    a. It was part of the conspiracy that the conspirators would and did target beneficiaries of federal health care benefit programs, including Medicare, for the purpose of procuring completed doctors' orders for DME.

    b. It was further part of the conspiracy that PARKER would and did utilize MLK to offer and pay kickbacks and bribes to others to acquire completed and signed doctors' orders for DME for federal health care program beneficiaries.

4

c.  It was further part of the conspiracy that PARKER would and did utilize UMC to solicit and receive kickbacks and bribes from DME front companies for reselling to them the completed and signed doctors' orders for DME for federal health care program beneficiaries.

d.  It was further part of the conspiracy that PARKER would and did disguise the nature and source of kickbacks and bribes paid to UMC by entering into sham contracts that falsely and fraudulently described the payments from the DME front companies to UMC as having been calculated by a purported hourly rate, when in truth the payments to UMC were calculated on a set amount per brace contained in the completed doctors' orders.

e.  It was further part of the conspiracy that the conspirators would and did use the completed doctors' orders for DME to submit and cause to be submitted false and fraudulent claims for payment to federal health care programs, including Medicare, on behalf of DME front companies in Pinellas County.

f.  It was further part of the conspiracy that the conspirators caused Medicare to pay DME front companies in Pinellas County as a result of claims submitted for DME using the completed doctors' orders brokered by PARKER.

g.  It was further part of the conspiracy that the conspirators would and did participate in meetings, perform acts, and make statements to accomplish the object of and to conceal the conspiracy.

### D.   Overt Acts

16.   In furtherance of the conspiracy, and to accomplish its purposes and object, the defendant,

STEVEN PARKER,

and co-conspirators, committed and caused others to commit at least one of the following overt acts, among others, in the Middle District of Florida:

a.   On or about March 11, 2019, PARKER paid kickbacks and bribes to Company 1 in the approximate amount of $1,080,316 in exchange for completed doctors' orders.

b.   On or about March 14, 2019, PARKER received kickbacks and bribes from Back Braces Plus Inc, a Pinellas County, Florida DME front company for completed doctors' orders for DME, which were used by said DME front company to submit false and fraudulent DME claims to Medicare for reimbursement.

All in violation of 18 U.S.C. § 371.

### FORFEITURE

1.   The allegations contained in Count One of this Information are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. § 982(a)(7).

2.   Upon conviction for the violations alleged in Count One, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any

and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offenses.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the approximate amount of $3,363,576, which is the amount the defendant obtained as a result of the commission of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

By: *[signature]*
Tiffany E. Fields
Assistant United States Attorney

By: *[signature]*
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section